**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLIGENDER, LLC, | § | |
| *Plaintiff and Counter-defendant,* | § | |
| | § | |
| v. | § | |
| | § | |
| ADRIAN SORIANO, VERONICA | § | |
| LORAY, HELLOBABY, LLC dba BEST | § | |
| BABY GENDER, AND FARMACIAS | § | |
| AHUMADA, SA, | § | NO. 2:10-CV-125-TJW |
| *Defendants.* | § | |
| | § | |
| | § | |
| ADRIAN SORIANO, | § | |
| *Third-party and Counter-plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| FARMACIAS AHUMADA, S.A. | § | |
| *Third-party Defendant* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

Before the Court are various motions filed by the parties in this case.  (Dkt. Nos. 18, 19, 22, 24, 25, 29, 34, 36, 38, 52, 57 & 64.)  The Court has carefully considered the arguments of the parties and the applicable law and makes the following rulings.  Plaintiff IntelliGender, LLC ("IntelliGender") has filed several motions to strike (Dkt. Nos. 25, 29 & 38) and these motions are GRANTED as unopposed.  IntelliGender has filed two motions for leave to file supplemental affidavits (Dkt. Nos. 34 & 36) and these motions are GRANTED as unopposed.  IntelliGender's motion to Dismiss Adriano Soriano's Original Counterclaim is DENIED as moot.  (Dkt. No. 52.) Defendants Soriano and Loray's motion to dismiss for insufficient service of process and

insufficient process is DENIED. (Dkt. No. 19.) As a result, Plaintiff's motion requesting an order requiring defendants to answer or permitting substituted service (Dkt. No. 22) is DENIED as moot. Defendants Loray and Soriano are instructed to answer Plaintiff's complaint within fourteen (14) days of this Memorandum Opinion and Order. The Court GRANTS-in-part FASA's[1] Rule 12(b)(5) Motion (Dkt. No. 57) and QUASHES the attempt of service by Soriano on FASA. Soriano is given sixty (60) days from the date of this Memorandum Opinion and Order to re-serve FASA. The Court DENIES FASA's motion to abstain from exercising jurisdiction in this case on the grounds of comity, or in the alternative, stay the claims against FASA. (Dkt. Nos. 57 & 70.) The Court DENIES FASA's motion to dismiss Soriano's claims on the basis of *forum non conveniens*. (Dkt. No. 57.) Defendant HelloBaby LLC's ("HelloBaby") motion to dismiss for lack of personal jurisdiction is DENIED. (Dkt. No. 18.) FASA's motion to dismiss for lack of personal jurisdiction is also DENIED. (Dkt. No. 57.) FASA's motion to dismiss under Rule 12(b)(6) is DENIED. (Dkt. No. 57.) The Court also DENIES IntelliGender's motion to dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. No. 64.)

## II.    BACKGROUND

The present case involves multiple parties with various unfair competition and business related tort claims. The plaintiff is IntelliGender, LLC ("IntelliGender"), and IntelliGender is a Texas limited liability company headquartered in Plano, Texas. The original defendants in this case included Adrian Soriano, Veronica Loray, HelloBaby LLC d/b/a Best Baby Gender ("HelloBaby"), and Farmacias Ahumasa, SA ("FASA"). (Dkt. No. 23.) FASA was dismissed by the plaintiff (Dkt. No. 45), but FASA is now involved again via a third party complaint and counterclaim filed by Soriano against FASA and IntelliGender. (Dkt. No. 58.)

---

[1] The Chilean company of Farmacias Ahumasa, SA is hereinafter referred to as "FASA."

IntelliGender makes products aimed for expectant mothers, and the relevant product in this case is a gender prediction test and kit that is designed to predict the gender of an unborn fetus. IntelliGender claims it has a variety of intellectual property rights in connection with its name and this product—including ownership of the IntelliGender mark as evidenced by United States Patent and Trademark Office Registration number 3496608 and application numbers 77802158 and 77152917. (Dkt. No. 23, at 5.) FASA is a major pharmaceutical retailer that has over 1200 retail stores located in South and Central America, including Mexico, Chile, and Peru. (*Id.*) Soriano was the Corporate Director of FASA. (*Id.* at 6.) Beginning in roughly June of 2009, Soriano, allegedly on behalf of FASA, began communicating with IntelliGender with respect to FASA becoming a potential retailer for IntelliGender's gender prediction test. (Dkt. No. 23, at 6-7; Dkt. No. 58, at 3.) As a result of the communications, FASA signed a Confidential Disclosure and Invention Ownership Agreement (the non-disclosure agreement, "NDA") on July 3, 2009. The NDA was signed on behalf of FASA by Marcelo Weisselberger, C.E.O. of FASA, and Fernando Escrich, C.F.O of FASA. In August of 2009, Soriano went to Texas on behalf of FASA to continue negotiations regarding FASA becoming a retailer. Throughout negotiations, Soriano obtained confidential information regarding IntelliGender's product including pricing information, research and development, and marking information. Negotiations, however, eventually broke down in approximately August of 2009.

Allegedly unbeknownst to FASA or IntelliGender, Soriano and his wife Loray formed a company called HelloBaby LLC, and Soriano and Loray are the only shareholders of the company. HelloBaby is also doing business as BestBabyGender.com, BBG, NewBabyGender.com, BabyTest.us, and HelloBaby.us. (Dkt. No. 23, at 2.) These websites were allegedly registered in approximately August and September of 2009. (Dkt. No. 28, 4-5.)

The websites offer for sale gender prediction kits that allegedly function similarly to those of IntelliGender's. IntelliGender claims that these websites even embedded the word "IntelliGender" deep in their metadata so computers searching for "IntelliGender" would be directed to the HelloBaby websites. Soon after discovering these websites, IntelliGender investigated and sent cease and desist letters to the defendants and eventually filed this lawsuit. IntelliGender sued Loray, Soriano, FASA, and HelloBaby for a variety of claims including breach of contract (i.e., the NDA), fraud and misrepresentation, fraud in the inducement, conversion and misappropriation of trade secrets, and unfair competition by misappropriation. (Dkt. No. 23, at 19-25.)[2]

Soriano later filed a counterclaim against IntelliGender and a third party complaint against FASA, after FASA was voluntarily dismissed by IntelliGender. Soriano claims he was negotiating with IntelliGender on behalf of FASA, so he is seeking indemnification from FASA. In addition, Soriano makes allegations against IntelliGender and FASA akin to a type of conspiracy. Soriano claims that it was October of 2009 that he and his wife established HelloBaby to market a gender prediction test based upon a different technology than IntelliGender's test. (Dkt. No. 58, at 4.) Then on March 25, 2010, Soriano states that IntelliGender contacted him with a cease and desist letter to shut down HelloBaby. Soriano also states that IntelliGender sent a letter to FASA falsely stating that Soriano had breached the NDA and infringed IntelliGender's intellectual property rights. (Dkt. No. 58, at 4.) These allegedly false statements formed the basis for one of Soriano's defamation claims when the statements were republished to the Chilean Department of Labor. Soriano claims that FASA and IntelliGender worked together and came to agreement for IntelliGender to drop its claims against

---

[2] Some causes of action were only alleged as to certain defendants.

FASA and for FASA to terminate Soriano and not defend him. (*See id.* at 4-5.) FASA eventually terminated Soriano and wrote a termination letter to Soriano that was subsequently published to the Chilean Department of Labor. Soriano claims the termination letter contains false statements and that the publication to the Chilean Department of Labor constituted defamation. Therefore, Soriano has a claim against FASA for indemnification, claims against FASA and IntelliGender for defamation and conspiracy to defame, and a claim against IntelliGender for tortious interference with a contract. (Dkt. No. 58, at 5-7.)

Subsequently to the parties filing their complaints and counterclaims, a long list of motions were filed by various parties—including motions to dismiss for personal jurisdiction, insufficient service of process, *forum non conveniens*, abstention, and failure to state a claim. In addition, during the time in which this case has been pending, as a result of Soriano being terminated by FASA, on June 10, 2010, Soriano filed a labor lawsuit in the Labor Court in Santiago, Chile. (Dkt. No. 57, Appendix, Bravo Decl., at ¶ 17.) Soriano claimed that he was improperly discharged. (*Id.* at ¶ 20.) In the time frame after most of the present motions were filed in this case, the Chilean Court ruled against Soriano and that decision is on appeal. (Dkt. No. 70, Appendix, Bravo Decl., at ¶ 5.) FASA's declarant, who is a Chilean attorney for FASA, states that the Chilean Court "concluded that Soriano obtained confidential information from IntelliGender by virtue of his status as Corporate Director of Business for FASA, and that Soriano took and used IntelliGender's confidential information for his own benefit, specifically in connection with the product created and merchandised by HelloBaby, LLC, a company in which Soriano and his wife, Veronic Loray, are partners." (*Id.*) FASA states that the Chilean Court proceedings add an additional procedural layer in this case and generate concerns for

international comity.  Therefore, with the abovementioned facts and procedural background in mind, the Court addresses the various pending motions in this Memorandum Opinion and Order.

## III.    DISCUSSION

### A.    Various Moot or Unopposed Motions

Before addressing the jurisdictional and other various motions in this case, the Court briefly addresses motions that are unopposed or moot.  There are several motions that have been filed in this case that are deemed unopposed because the opposing party or parties have not responded.  Local Rule CV-7(e) requires a party opposing a motion to respond within seventeen days unless the party moves the court to shorten or lengthen that period.  Local Rule CV-7(d) states that "[i]n the event a party fails to oppose a motion in a manner prescribed herein, the court will assume that the party has no opposition."

Plaintiff Intelligender filed a motion to strike paragraph eight of the Soriano Declaration. (Dkt. No. 25.)  The Soriano Declaration is attached to Defendant HelloBaby's motion to dismiss. (Dkt. No. 18.)  Defendant Hellobaby has not responded to the motion to strike for over six months.  Therefore, the Court GRANTS the motion to strike (Dkt. No. 25) as unopposed.

Plaintiff Intelligender filed a motion to strike paragraph two of the Moeller Declaration— the only substantive paragraph in the declaration.  (Dkt. No. 29.)  The Moeller Declaration is attached to Soriano and Loray's motion to dismiss for insufficient process and insufficient service of process.  (Dkt. No. 19.)  Defendants Soriano and Loray have not responded to the motion to strike for over six months.  Hence, the Court GRANTS the motion to strike (Dkt. No. 29) as unopposed.

Plaintiff Intelligender filed a motion for leave to file a supplemental affidavit of Don Garland.  (Dkt. No. 34.)  This motion has also not been responded to by Defendants.  Therefore, the Court GRANTS this motion for leave (Dkt. No. 34) as unopposed.

Plaintiff Intelligender filed a motion for leave to file the supplemental affidavit of Goldyn Summit. (Dkt. No. 36.) This motion has also not been responded to by Defendants so it is therefore GRANTED as unopposed.

Plaintiff Intelligender also filed a motion to strike the affidavit of Ana Soriano. (Dkt. No. 38.) The affidavit of Ana Soriano is attached to Defendants' reply brief regarding Defendants Soriano and Loray's motion to dismiss. (Dkt. No. 32.) The motion is also unopposed because Defendants have not responded, so the Court GRANTS Plaintiff's motion to strike as unopposed. (Dkt. No. 38.)

Plaintiff Intelligender has also filed a motion to dismiss Adriano Soriano's counterclaim. (Dkt. No. 52.) Since that filing, however, Soriano has filed an amended counterclaim (Dkt. No. 58) and Plaintiff has filed a new motion to dismiss based on the amended counterclaim. (Dkt. No. 64.) Therefore, the Court DENIES Plaintiff's motion to dismiss Soriano's original counterclaim as moot. (Dkt. No. 52.)

### B. Motions to Dismiss for Insufficient Process and Insufficient Service of Process or Motion to Quash Service of Process

Two motions to dismiss for insufficient service of process have been filed in this case. The Court's rulings are summarized here. Defendants Soriano and Loray's motion to dismiss for insufficient service of process and insufficient process is DENIED. (Dkt. No. 19.) Defendants Loray and Soriano are instructed to answer Plaintiff's complaint within fourteen (14) days of this Memorandum Opinion and Order. As a result, Plaintiff's motion requesting an order requiring defendants to answer or permitting substituted service (Dkt. No. 22) is DENIED as moot. The Court GRANTS-in-part FASA's Rule 12(b)(5) Motion and QUASHES the attempt of service by Soriano on FASA. Soriano is given sixty (60) days from the date of this Order to re-serve FASA. Soriano is further Ordered that when attempting to re-serve FASA, he must do so under

Rule 4(f)(1) or Rule 4(f)(2).  If Soriano is still not able to properly serve FASA after exercising

due diligence to serve process under Rule 4(f)(1) and Rule 4(f)(2), then Soriano may request

from this Court an alternative means of service under Rule 4(f)(3).  Any such request must also

be made within sixty (60) days of this Order.

### 1.     Legal Standard for Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5)

A party may move to dismiss a pleading under Federal Rule of Civil Procedure 12(b)(4) for

insufficient process or 12(b)(5) for insufficient service of process.  It is important to distinguish

between Rule 12(b)(4) and 12(b)(5).

> An objection under Rule 12(b)(4) concerns the form of the process rather than the
> manner or method of its service.  Technically, therefore, a Rule 12(b)(4) motion is
> proper only to challenge noncompliance with the provisions of Rule 4(b) or any
> applicable provision incorporated by Rule 4(b) that deals specifically with the
> content of the summons.  A Rule 12(b)(5) motion is the proper vehicle for
> challenging the mode of delivery or the lack of delivery of the summons and
> complaint.  Other than those cases in which it is confused with a motion under
> Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed.

Supp. 2010).  "As with a challenge to jurisdiction, when service of process is challenged, the

party on whose behalf service is made has the burden of establishing its validity."  *Familia De

Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980).

A district court faced with a Rule 12(b)(5) motion normally has discretion to either

dismiss the action or simply to quash service.  *Montalbano v. Easco Hand Tools, Inc*., 766 F.2d

737, 740 (2d Cir. 1985).  *See also Raburn v. Dae Woo, Inc.*, No. 3:09-CV-1172-G, 2010 WL

743933, at *4 (N.D. Tex. Mar. 3, 2010) (citing *Montalbano* for this rule); *Nabulsi v. Nahyan*, No.

H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009) (same).  In addition, courts have

observed that dismissal for insufficient service of process is generally not appropriate unless

there is no reasonably conceivable means of acquiring jurisdiction over the party.  *Stanga v.*

*McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959) (stating that it would not be proper to dismiss the cause of action for insufficient service of process until "there is simply no reasonably conceivable means of acquiring jurisdiction over the person of a defendant"); *Sherman v. Dallas ISD*, No. 3:10-cv-1146-B-BH, 2011 WL 477500, at *2 (N.D. Tex. Jan. 24, 2011) (citing *Stanga* for this rule); *Grant-Brooks v. Nationscredit Home Equity Servs. Corp.*, No. 3:01-CV-2327, 2002 WL 424566, at *4 (N.D. Tex. Mar. 15, 2002) ("Indeed, dismissal is not appropriate unless 'there is no reasonably conceivable means of acquiring jurisdiction over the person of a defendant.'") (citing *Stanga*).

The Court must also consider, however, the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, which provides that if service upon a Defendant has not been made within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m).

> **2. Soriano and Loray's Motion to Dismiss for Insufficient Process and Insufficient Service of Process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) (Dkt. No. 19).**

Soriano and Loray move the Court to dismiss the claims by IntelliGender against them for insufficient process and insufficient service of process. (Dkt. No. 19.) Soriano and Loray state that neither of them were in the country on the purported date of service that IntelliGender has cited, so neither have been served with process. Although Soriano and Loray's motion is filed under both Rules 12(b)(4) and 12(b)(5), the motion only appears to challenge the mode and/or actual delivery of the summons and complaint to the defendants. There is no clear evidence or even argument that implicates Rule 12(b)(4). Therefore, the Court treats this motion as a motion to dismiss under Rule 12(b)(5) only.

Plaintiff claims it properly served Defendants Soriano and Loray in accordance with New York law. Plaintiff claims it served process on Defendants in New York, and Federal Rule of Civil Procedure 4(e)(1) allows service pursuant to the law of the state where the service is effected. *Izen v. Catalina*, 256 F.3d 324, 327 (5th Cir. 2001). Under New York law, one proper method of service of process upon a natural person is:

> where service under paragraphs one and two[3] cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law . . . .

N.Y. C.P.L.R. § 308(4) (McKinney 2010). It is clear under New York law that a defendant can have more than one "actual place of business" for purpose of service of process. *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002). Further, in determining whether an address constitutes ones "actual place of business," the court may consider factors such as where mail is delivered or public and privately recorded information connecting a particular address as the "place of business." *See id.* at 326 (using such factors to make a determination that a particular address constituted the "actual place of business" of the company).

---

[3] The reference to paragraphs "one" and "two" refers to the method of delivering the summons directly to the person within the state or to someone of suitable age and discretion at the place of business or dwelling place of such individual. Those forms of service were attempted with due diligence in this case.

Plaintiff provides several affidavits and other exhibits to show it met the requirements under N.Y. C.P.L.R. § 308(4). First, Plaintiff provides the affidavit of Caswell Bryan, a licensed New York City process server, who describes how he met the requirements of N.Y. C.P.L.R. § 308(4). (Bryan Aff., attached to Dkt. No. 30.) The Bryan Affidavit explains that the method of service was performed at the place of business of Soriano and Loray at address 265 W. 87th Street, Apt. 6D, New York, NY 10024. (*Id.* at 1.) Additionally, Plaintiff provides proof that the address of 265 W. 87th Street, Apt. 6D, New York, NY 10024 is the place of business for HelloBaby (and the four websites it operated), and Hellobaby is owned and operated by Soriano and Loray. Plaintiff provided a copy of a Westlaw People Finder report that showed the address of Adrian Soriano and Ana Soriano to be at 265 W. 87th Street. (Ex. C attached to Dkt. No. 30.) Plaintiff provided a copy of the domain name registration of Bestbabygender.com (a website of Hellobaby), and that registration listed Veronica Loray as the administrative contact at the 265 W. 87th Street address. (Ex. E attached to Dkt. No. 30.) Plaintiff also provided the copy of email addresses registered under the domain name of HELLOBABY.US. (Ex. F attached to Dkt. No. 30.) These email addresses are registered with technical contact information stating to contact Hellobaby at the address of 265 W. 8th Street. (*Id.*) Finally, Plaintiff gives proof that it met the twenty day filing requirement and other various requirements under N.Y. C.P.L.R. § 308(4).

The Court holds that the Plaintiff has sufficiently met its burden of proving the adequacy of its service of process on Loray and Soriano. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 384 (S.D.N.Y. 2006) ("When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'"). Defendants Loray and Soriano have provided no affidavits or other sources of proof to rebut

Plaintiff's showing.[4]   Therefore, Defendants' motion to dismiss for insufficient process or insufficient service of process (Dkt. No. 19) is DENIED.   As a result, Plaintiff's motion requesting an order requiring defendants to answer or permitting substituted service (Dkt. No. 22) is DENIED as moot.   Defendants Loray and Soriano are instructed to answer Plaintiff's complaint within fourteen (14) days of this Memorandum Opinion and Order.

### 3.   Third-Party Defendant FASA's Motion to Dismiss or Quash Service of Process (Dkt. No. 57).

FASA argues that Soriano's third-party claims against FASA, a Chilean corporation, should be dismissed pursuant to Rule 12(b)(5) or, in the alternative, service in this case should be quashed.   FASA claims that Soriano's service of process did not meet the requirements of Federal Rule of Civil Procedure 4(f), which, according to Federal Rule of Civil Procedure 4(h)(2), sets forth the service requirements for a foreign corporation in a foreign country.   FASA argues that Soriano did not comply with Rule 4(f)(1) by serving in accordance with an "internationally agreed means of service," that is, in this case, the Inter-Americans Convention on Letters Rogatory (the "Inter-American Convention").   Rule 4(f)(2), however, provides for additional means of service in the case where the "international agreement allows but does not specify other means."   FASA concedes that the Fifth Circuit, in *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634 (5th Cir. 1994), held that the Inter-American Convention is not the only means of effecting service on a defendant residing in a signatory nation other than the forum nation.   But FASA argues that Soriano has not served "by a method that is reasonably calculated to give notice" which is proscribed under Rule 4(f)(2).   Finally, FASA states that

---

[4] As discussed above, the Court strikes the Ana Soriano Affidavit attached to Defendants' reply brief (Dkt. No. 32) and the Court strikes the only substantive portion of the Moeller Declaration attached to Defendants' motion (Dkt. No. 19).   Therefore, because there are no other affidavits, declarations, or other types of documents that Defendants have provided for support, the Defendants have provided nothing to rebut Plaintiff's showing of adequacy of service of process.

Soriano has not provided service under Rule 4(f)(3) because the Court has not ordered any other means of service to be performed in this case.

Soriano readily admits that he has not properly served process under Rule 4(f)(1)-(3). (*See* Dkt. No. 65, at 7-8). But Soriano nevertheless requests the Court retroactively grant him leave to perform alternative service under Rule 4(f)(3) and, essentially, allow him to serve in the manner in which he has previously served FASA. (*See id.*) In addition, Soriano requests FASA bear the cost of this alternative method of service.

For the following reasons, the Court denies Soriano's requests. Although Soriano provides some authority that would allow the Court to issue an Order pursuant to Rule 4(f)(3) nunc pro tunc despite Soriano never requesting alternative service,[5] the Court refuses to do so in this case. The Court may only allow alternative service under Rule 4(b)(3) if the alternative means are "not prohibited by international agreement," that is, in this case, not prohibited by the Inter-American Convention. Presently, as the party bearing the burden on this matter, Soriano has not attempted to show that its alternative means of service is not prohibited by the Inter-American Convention. Rather, Soriano's brief implies the opposite when it states its service on FASA "was a great deal faster than it would have been had service been attempted pursuant to the Inter-American Convention." (Dkt. No. 65, at 8.)

Therefore, the Court GRANTS-in-part FASA's Rule 12(b)(5) Motion and QUASHES the attempt of service by Soriano on FASA. Soriano is given sixty (60) days from the date of this Order to re-serve FASA. Further, Soriano is Ordered that when attempting to re-serve FASA, he must do so under Rule 4(f)(1) or Rule 4(f)(2). If Soriano is still not able to properly serve FASA

---

[5] *See Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 379-380 (E.D. Penn. 2009). *But see Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004) (holding that the plaintiff "must obtain prior court approval for the alternative method of serving process").

after exercising due diligence to serve process under Rule 4(f)(1) and Rule 4(f)(2), then Soriano may request from this Court an alternative means of service under Rule 4(f)(3). Any such request must also be made within sixty (60) days of this Order. Furthermore, any request for alternative service must be specific in the alternative method requested and explain why that specific method would not be prohibited by the Inter-American Convention.

## C.     FASA's Motion for Abstention on the Grounds of Comity

As an alternative argument, FASA argues the Court should abstain from exercising jurisdiction in this case on the grounds of comity. (Dkt. No. 57, at 22.) In addition, in FASA's reply brief on this issue, FASA states that Soriano's third-party claims should be stayed. (Dkt. No. 70, at 8.) The Court DENIES both requests.

FASA's argument for abstention is based on the employment dispute proceeding in the Chilean Labor Court. As noted above, before Soriano commenced his third-party complaint in this Court, he commenced an action in the Chilean Labor Court. The issue in the Chilean Labor Court was whether Soriano's termination from FASA was warranted. Since the time at which FASA's original motion was filed on September 16, 2010, the Chilean Labor Court has issued a ruling in the matter on October 15, 2010. (*See* Bravo Decl. attachment, Dkt. No. 70, Ex. 4-A.) FASA's witness regarding Chilean law, Inger Marcela Dahl Bravo, states that the "Chilean Court concluded that Soriano obtained confidential information from IntelliGender by virtue of his status as Corporate Director for FASA, and that Soriano took and used IntelliGender's confidential information for his own benefit, specifically in connection with the product created and merchandised by HelloBaby, LLC, a company in which Soriano and his wife, Veronic Loray, are partners." (*Id.* at Ex. 4, 3-4.) FASA states that the Chilean Court rejected Soriano's

claim of improper termination of employment.[6]

The doctrine of abstention may be used by federal courts to abstain from exercising jurisdiction based on a related proceeding in a foreign jurisdiction. The notion underlying what is called the *Colorado River* doctrine is that in some circumstances it may be appropriate for a federal court to refrain from exercising jurisdiction to avoid duplicative litigation. *Noble Drilling Servs. v. Noble Denton Marine, Inc.*, No. 4:09-cv-3074, 2010 WL 1790202, at *4 (S.D. Tex. May 4, 2010). Although the Supreme Court in *Colorado River* applied the doctrine to a parallel state court proceeding, the same general principles have been applied with respect to parallel proceedings in a foreign court. *Finova Capital Corp.v. Ryan Helicopters USA, Inc.*, 180 F.3d 896, 898 (7th Cir. 1999). It has also been observed, however, that federal courts have a "'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Finova*, 180 F.3d at 898 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

In assessing the merits of the abstention doctrine in this case, the first step is to determine whether the federal and foreign proceedings are in fact parallel. *Id.* "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990). The suit in the Chilean Labor Court is not a parallel proceeding as the proceeding in this Court. The Chilean Labor Court only had FASA and Soriano as parties before it, yet this Court additionally has

---

[6] The Court observes that the Chilean Court's Order was written in Spanish, and FASA has provided a translator, who happens to be a Chilean attorney, to translate the Order. (*See* Dkt. No. 70, Ex. 5.) The translation, however, is really a summary of the Order in English. That is, only brief portions of the Order are translated in full. Although the Court accepts FASA's translator's representation of "summaries" of the Order for the purposes of this motion, the Court is not indicating in any way that such "summaries" will be accepted in future proceedings in this case as accurately summarizing the Order.

IntelliGender, HelloBaby, and Loray as parties in this case. Additionally, the dispute before the Chilean Labor Court was whether Soriano's termination of employment was proper. Though that may be a small facet of the dispute in this case, this case also includes claims of defamation, indemnification, and other various business torts that were not before the Chilean Labor Court. Therefore, FASA's motion for this Court to abstain from jurisdiction in this case is DENIED.

FASA additionally asks the Court to stay the proceedings in this case since the Chilean Labor Court has issued its ruling and that ruling is currently on appeal. FASA's reply brief that requests the stay cites no law in support for its proposition, so the legal basis for FASA's motion is not clear. (*See* Dkt. No. 70, 8-9.) In any event, to the extent FASA's argument is based on the *Colorado River* doctrine, that request is DENIED for the same reasons as explained above. Alternatively, to the extent FASA is attempting to raise a collateral estoppel argument, then the Court holds that FASA has not yet met its burden of showing any issues in this case are collaterally estopped by the Chilean Labor Court rulings.

### D. FASA's Motion to Dismiss on the Basis of *Forum non Conveniens*

FASA moves the Court to dismiss Soriano's claims on the basis of *forum non conveniens*, and the Court DENIES that motion. (Dkt. No. 57, at 24.) FASA claims that Chile is the more adequate and appropriate forum to litigate Soriano's claims against FASA. The United States Supreme Court has set forth a two-step process that a district court must follow in addressing a *forum non conveniens* motion. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). First, the court must find that there is an adequate alternative forum that is available try the case. *Nolan v. Boeing Co.*, 919 F.2d 1058, 1069 (5th Cir. 1990). "A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d

208, 221 (5th Cir. 2000) (quoting *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987)). Specifically, the Fifth Circuit in *In re Air Crash Disaster Near New Orleans* held that there was no alternative foreign forum where the United States was a defendant to the plaintiffs' cause of action and no other forum besides the United States could entertain these claims. 821 F.2d at 1168. Likewise, in the present case, Soriano has claims against FASA and IntelliGender. Though FASA has the burden as the movant in the *forum non conveniens* motion, *id.* at 1164, FASA has provided no evidence that the claims against IntelliGender could be made in a Chilean court. Indeed, based on the facts before this Court, it is questionable whether a Chilean court would even have jurisdiction over IntelliGender. Therefore, the *forum non conveniens* motion fails at the first step. The Court DENIES FASA's motion to dismiss on the basis of *forum non conveniens*.

### E.    Motions to Dismiss for Lack of Personal Jurisdiction

Two parties in this case have filed motions to dismiss for lack of personal jurisdiction. Defendant HelloBaby's motion to dismiss for lack of personal jurisdiction is DENIED. (Dkt. No. 18.) FASA's motion to dismiss for lack of personal jurisdiction is also DENIED. (Dkt. No. 57.)[7]

### 1.    Applicable Law Regarding Personal Jurisdiction

Personal jurisdiction is appropriate over the defendant if the state's long-arm statute permits the assertion of jurisdiction without violating federal due process. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Texas's long-arm statute reaches to the constitutional limits;

---

[7] The Court observes that it cannot exercise personal jurisdiction over FASA until FASA has properly been served with process. *See Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). The Court is only holding here that FASA's motion to dismiss for lack of personal jurisdiction is denied. Because the Court is also quashing Soriano's service of process on FASA, the Court will not exercise personal jurisdiction over FASA until FASA is properly served.

therefore, we only ask if exercising jurisdiction over the defendant would offend due process and the jurisdictional analysis under Texas and federal law are the same. *Id.* at 469-70. The "constitutional touchstone" for determining whether personal jurisdiction over the defendant would offend due process is "whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In addition, once the defendant's "minimum contacts" with the forum have been established, the Court must also consider whether the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 466 (citing *Int'l Shoe*, 326 U.S. at 320).

Personal jurisdiction has generally been divided into two categories: general personal jurisdiction and specific personal jurisdiction. The parties have not argued that HelloBaby or FASA are subject to general personal jurisdiction in this case, so the Court only considers specific personal jurisdiction. Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *See id.* at 472 (citations omitted). The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. *Id.* at 474. Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

The Court has not held an evidentiary hearing on the motion to dismiss for lack of personal jurisdiction, so the plaintiff may satisfy its burden of establishing personal jurisdiction by presenting a *prima facie* case. *R & B Falcon Drilling (Int'l & Deepwater), Inc. v. The Noble Denton Grp.*, 91 Fed. Appx. 317, 320 (5th Cir. 2004). Even though the Court has received

discovery materials and allowed jurisdictional discovery, because the Court has not held a full and fair hearing, the Court must not act as fact finder and should construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts. *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

## 2. Defendant Hellobaby's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 18).

Defendant HelloBaby argues that it is not subject to personal jurisdiction in this case because it is a non-resident limited liability company with no purposeful contacts with Texas. HelloBaby contends that it has no offices or business operations in Texas, does not advertise in Texas, has no employees in Texas, owns no property in Texas, maintains no bank accounts in Texas, and maintains no registered agent for service of process in Texas. Plaintiff IntelliGender, on the other hand, argues there are four reasons why HelloBaby should be subject to personal jurisdiction in Texas for this case: (1) HelloBaby's website actively seeks orders and survey responses from Texas residents; (2) Soriano is HelloBaby's alter ego; (3) HelloBaby committed a tort in Texas through its website; and (4) HelloBaby has made an affirmative demand for relief in Texas via a cease and desist letter.

The Court holds that Plaintiff has presented a *prima facie* case showing that HelloBaby has committed a tort in Texas through its website; therefore, the Court DENIES HelloBaby's motion to dismiss for lack of personal jurisdiction on that ground. Courts within the Fifth Circuit have repeatedly held that the exercise of specific personal jurisdiction over a defendant for its Internet activities, such as trademark infringement and cybersquatting, is proper when a defendant directs its tortious activities toward the forum state. *See, e.g.*, *Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being

asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001). The analysis in *First Fitness Int'l, Inc. v. Thomas* is useful in this case. 533 F. Supp. 2d 651 (N.D. Tex. 2008). Among other things, the court in *First Fitness* found evidence that the defendant may have intentionally infringed the plaintiff's trademarks with knowledge that its tortious actions would harm the plaintiff in Texas—the location of its principal place of business. *Id.* at 656. The court noted that "this is not a case where defendants innocently used a mark that they were unaware was registered or innocently registered a domain name similar to a registered mark with a good faith intent to use it for unrelated activity." *Id.* at 657 n.3. In that case, the court observed that some courts would not have found personal jurisdiction. *Id.* But there had been a *prima facie* showing in *First Fitness*, however, that the defendant did something more to direct its activities at the forum state "by intentionally undertaking the alleged tortious actions in an attempt to divert customers away from [the plaintiff] with intimate knowledge of [the plaintiff], its location in Texas, and its valuable trademark rights . . . ." *Id.*

Similarly to *First Fitness*, the plaintiff makes various claims against HelloBaby, including that HelloBaby misappropriated its trade secrets and trade name, copied its trade dress, and committed trademark and trade name infringement. (2nd Am. Compl. ¶¶ 34-37, 67.) After being given time to perform jurisdictional discovery, Plaintiff IntelliGender has provided deposition testimony and affidavits that allege facts to create a *prima facie* showing of these claims. (*See* Dkt. No. 28, Ex. A; Dkt. No. 57, Ex. A.) Part of the factual basis for IntelliGender's claims is that Defendant HelloBaby's websites—such as BestBabyGender.com— were using the mark "IntelliGender" in their metadata and on the content of their websites in an effort to drive web traffic to their Websites. IntelliGender believes web traffic is being driven to HelloBaby's websites as consumers confusingly are directed to BestBabyGender.com after

performing an Internet search for IntelliGender.  On one webpage of BestBabyGender.com, for example, it states in extremely small print on the bottom of the page: "We have no affiliation with IntelliGender, LLC neither we offer any of their products for sale."  (*See* Dkt. No. 67, Ex. D.)    At a minimum, the screen shots of the BestBabyGender.com website—a website of HelloBaby's—show some support for IntelliGender's theory.  Although Defendant HelloBaby has provided deposition testimony and affidavits that tend to rebut some of the plaintiff's factual assertions, the plaintiff has nevertheless established a *prima facie* case for the torts that the plaintiff alleges.  In addition, the Court construes all disputed facts in the plaintiff's favor.  *See Walk Haydel*, 517 F.3d at 241.

As in *First Fitness*, the plaintiff has presented a *prima facie* case that Defendant HelloBaby has purposefully directed its activities at this forum by intentionally undertaking the tortious actions in an attempt to divert customers away from the plaintiff with intimate knowledge of the plaintiff, its location in Texas, and its valuable trademark rights and trade secrets.  Furthermore, the alleged injuries of the plaintiff arise from this purposeful activity on behalf of the defendant.  Based on these activities, Defendant HelloBaby could have reasonably anticipated being haled into court in the plaintiff's forum state—Texas.

Finally, the exercise of personal jurisdiction over HelloBaby in this case does not offend notions of fair play and substantial justice.  "In confronting this issue, a court examines: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."  *Paz v. Brush Eng'red Materials, Inc.*, 445 F.3d 809, 814 (5th Cir. 2006).  In considering these factors, there appears no reason why exercising jurisdiction over HelloBaby in this Court would run afoul of notions of

fair play and substantial justice.  First, the defendant's burden of defending a suit in Texas would be minimal, as the only two employees of HelloBaby, Soriano and Loray, are already appearing before the court in this case.  Second, the forum state of Texas has a great interest in adjudicating a dispute of an alleged tort of a company headquartered in its state.  Third, the plaintiff has an interest in convenient and effective relief because it already has similar claims against Soriano and Loray in this Court.  Fourth, the judicial system's interest in efficient resolution of controversies supports personal jurisdiction.  If this case against HelloBaby were to proceed in another jurisdiction, for example, the many of the same issues that will be litigated in this lawsuit would have to be re-litigated.  Finally, the state's shared interest in furthering fundamental social policies gives no reason to abstain from personal jurisdiction over HelloBaby.  Instead, encouraging fair business practices is an important fundamental social policy that this state has created laws to support.

Therefore, the Court DENIES HelloBaby's motion to dismiss for lack of personal jurisdiction on the grounds that HelloBaby is subject to specific personal jurisdiction by virtue of it having committed a tort in Texas.  In addition, the Court observes that Plaintiff IntelliGender has provided three other grounds for the Court to find personal jurisdiction.  Although the Court is not holding that the other grounds may allow for personal jurisdiction on their own merit, at a minimum, the other grounds provide further support that the Court is not offending notions of fair play and substantial justice.  First, HelloBaby admits that has made three regular sales of gender tests to Texas residents and four Ebay sales for delivery in Texas.  Second, HelloBaby does not deny that it caused a cease and desist letter to be sent to Texas to IntelliGender.  (Dkt. No. 71, at 5.)  Finally, although the Court need not rule at this time whether Soriano is the alter ego of HelloBaby, the Court observes that there is at least some evidence to support a piercing of

the corporate veil in this case. And if the Court pierces the corporate veil, personal jurisdiction over HelloBaby would be no issue because Soriano is unquestionably subject to personal jurisdiction in this forum.

> **2.** **FASA's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 57).**

FASA argues it cannot be subject to specific personal jurisdiction because (1) it does not have minimum contacts with Texas; (2) Soriano's claims do not arise from any minimum contacts with Texas; and (3) the exercise of jurisdiction in Texas would offend traditional notions of fair play and substantial justice. For Soriano's defamation claim, FASA states that there cannot be specific personal jurisdiction on the basis of that claim because the allegedly defamatory letter was published to the Chilean Department of Labor by a Chilean company (FASA) with respect to an employee (Soriano) in Chile. Therefore, there are no minimum contacts with respect to that claim. For the indemnification claim, FASA argues that this claim turns on whether Soriano was acting within the scope of his employment when he negotiated with IntelliGender. Because Soriano's employment contract was created in Chile and is governed by Chilean law, FASA argues there are no minimum contacts with Texas regarding this claim.

Soriano argues that FASA's arguments regarding specific personal jurisdiction dissect his claims too finely, and for at least the indemnification claim, the Court agrees. FASA seeks to frame the indemnification issue as a Chilean employment dispute regarding a Chilean employment contract to be interpreted by Chilean law. Under that view, FASA argues there are no minimum contacts with Texas nor claims that arise out of any minimum contacts with Texas. Regardless of whether these claims are true, FASA ignores the fact that the indemnification action arises out of FASA's contacts with IntelliGender, who is based in Texas.

The facts of this case clearly show FASA's minimum contacts with Texas through its interactions with IntelliGender—a company based in Plano, Texas. Soriano contacted IntelliGender allegedly on behalf of FASA to see if FASA could potentially distribute IntelliGender's product in Latin American countries. (Soriano Decl., attached to Dkt. No. 65.) Soriano engaged in back-and-forth communications with IntelliGender on behalf of FASA for several weeks. (*Id.*) Then FASA entered into a non-disclosure agreement ("NDA") with IntelliGender. (*Id.*) Soriano did not sign the agreement; instead, the agreement was signed by Marcelo Weisselberger and Fernando Escrich, FASA's CEO and CFO, on behalf of FASA. (*Id.*; *see also* the NDA, attached to Dkt. No. 67, Ex. G.) The NDA calls for the application of Texas law. (Dkt. No. 67, Ex. G.) Soriano even travelled to Plano, Texas to meet with IntelliGender on behalf of FASA to attempt to negotiate an exclusive license agreement. (Soriano Decl., attached to Dkt. No. 65.) These negotiations eventually broke down, and then after subsequent events, IntelliGender filed this lawsuit against Soriano, Loray, HelloBaby, and FASA. A large part of IntelliGender's claims arose out of the alleged breach of the NDA by FASA through Soriano. Although IntelliGender's claims against FASA were dismissed by IntelliGender, its claims against Soriano still exist and it is these claims for which Soriano seeks indemnification.

The indemnification claim by Soriano against FASA undoubtedly relates to the NDA signed by FASA. Therefore, it is clear that the claims here arise from FASA's minimum contacts with Texas. FASA argues that Soriano was not acting within the scope of his employment, according to Chilean law, so FASA cannot be required to indemnify Soriano. This argument, however, goes to the merits of Soriano's indemnification claim and not whether this Court can exercise personal jurisdiction over FASA.

Finally, FASA argues that exercising personal jurisdiction in this case would offend

traditional notions of fair play and substantial justice. For support, FASA states the analysis from the Supreme Court in *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987), is controlling and analogous. Similar to the present facts, the personal jurisdiction issue in *Asahi* related to an indemnification action by one foreign defendant against another foreign defendant. *Id.* at 106. The analogy, however, stops there. In *Asahi*, the claim for indemnification was based on a transaction that took place in Taiwan. *Id.* at 114. In this case, the indemnification is based partially on a violation of a NDA with a company in Plano, Texas. The indemnity defendant in *Asahi* had no reason to think it would be haled into court in California for actions taken solely in Japan and Taiwan. *Id.* at 114-15. FASA had every reason to believe it may be haled into Court for violations related to the NDA. Finally, unlike in *Asahi*, the state of Texas has a strong interest in litigation resulting from non-disclosure agreements entered into with Texas companies. Hence, *Asahi* does not support a finding that this case would offend traditional notions of fair play and substantial justice. The Court holds that it has specific personal jurisdiction over FASA in this case and therefore DENIES FASA's motion to dismiss for lack of personal jurisdiction.

### F. Motions to Dismiss for Failure to State a Claim

There are two pending motions to dismiss for failure to state a claim under Rule 12(b)(6). FASA's motion to dismiss under Rule 12(b)(6) is DENIED. (Dkt. No. 57.) The Court also DENIES IntelliGender's motion to dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. No. 64.)

#### 1. Legal Standard

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to

dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

The Supreme Court has recently pronounced two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### 2.     FASA's 12(b)(6) Motion (Dkt. No. 57).

FASA's only argument in its Rule 12(b)(6) motion to dismiss is that Soriano failed to state a claim for defamation because the statements that FASA made in the letter published to the Chilean Department of Labor are absolutely privileged. FASA argues that under Texas law, "any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged . . . ." *Duncan Family Trust v. Chesapeake Exploration, LLC*, No. 4:08-cv-325, 2008 WL 5272497, at *2 (E.D. Tex. Dec. 17, 2008) (citations omitted). Further, FASA argues that under Texas law, even assuming the communication was false and made or published with express malice, no civil remedy for defamation exists for an absolutely privileged communication. *See 5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 256 (Tex. App.—Fort Worth 2004, pet. denied). Hence, FASA argues its statements in the letter which was published to the Chilean Department of Labor are absolutely privileged and cannot form the basis of a defamation claim because the letter was published in the course of a judicial proceeding. This Court, however, is not convinced that Texas law necessarily applies for the defamation claim. But neither party has performed the necessary choice of law analysis nor has either party explained how Chilean civil defamation law may apply in this case.

Because jurisdiction in this case is based on diversity of citizenship as well as the presence of a federal question, we follow the choice of law rules of Texas—the forum state. *Totalplan Corp. of America v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994).[8] For the defamation

---

[8] This Court is not aware of any Fifth Circuit court that has decided what choice of law rules to apply when jurisdiction is based on both diversity and federal question jurisdiction. This Court, however, applies the rule set forth by the Second Circuit in *Totalplan* for two reasons. First, the law that would be applied in this case is the same whether federal common law or state law choice of law principles are used. *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 809 (5th Cir. 2009) ("[C]ircuit courts have concluded that a federal common law choice-of-law analysis should be conducted when the issue is a federal question, and that in the absence of guidance from Congress, courts have relied upon the Restatement (Second) of Conflicts of the Law for the content of federal common law."); *Levine v. CMP Publications, Inc.*,

27

claim, Texas law adheres to the Restatement (Second) of Conflict of Laws § 149, which states "the local law of the state where publication occurs determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6[9] to the occurrence and the parties . . . ." *See Levine v. CMP Publications, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). Under this choice of law rule, it appears Chilean law should apply to the defamation claim by Soriano against FASA.[10] The publication of FASA's termination letter of Soriano occurred in Chile at the Chilean Department of Labor, so under the Restatement, Chilean law should apply unless Texas has the more significant relationship. But the Court cannot adequately determine whether Texas has the more significant relationship at this time. The parties have not briefed the choice of law issue. In addition, the Court is unaware of the operation of Chilean defamation law because the parties have not briefed that issue either. Without knowledge of Chilean defamation law, it is difficult to analyze some of the factors in the Restatement's most significant relationship test. FASA, however, has the burden of proving its affirmative defense of privilege for this defamation claim.

---

[9] 738 F.2d 660, 667 (5th Cir. 1984) (stating that Texas law would apply the general rules set forth in the Restatement (Second) of Conflicts for the defamation claim). Second, if the defamation claim were brought by itself in federal court, it would be brought under diversity jurisdiction and Texas choice of law rules would apply. *See Glazer v. Glazer*, 374 F.2d 390, 407 (5th Cir. 1967) (applying forum state rules in diversity cases).

[9] These principles or factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *See* Restatement (Second) of Conflict of Laws § 6.

[10] The Court is only referring to the defamation claim by Soriano against FASA by virtue of the termination letter that FASA wrote. Soriano also has a defamation claim against IntelliGender. (*See* Dkt. No. 58, at 6.) Different acts of defamation may be governed by different law; indeed, it is possible that the same communication by the defamer may be governed by different law when such communication is made to different persons in different jurisdictions. *See* Restatement (Second) of Conflict of Laws § 149 (comment (a)).

*See IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 471 (Tex. App.—Amarillo 2001, pet. denied) (describing how the privilege is an affirmative defense that muse be proven by the defendant). FASA has not met that burden because it has not even provided the Court with the necessary information it needs for the defamation privilege analysis. Therefore, the Court DENIES, without prejudice, FASA's Rule 12(b)(6) motion to dismiss Soriano's defamation claim.

## 2. IntelliGender's 12(b)(6) Motion (Dkt. No. 64)

IntelliGender also files a Rule 12(b)(6) Motion to dismiss Soriano's First Amended Counerclaim. (Dkt. No. 64.) Soriano's First Amended Counterclaim against IntelliGender (Dkt. No. 58) includes claims for: (1) tortious interference with a contract; (2) defamation; and (3) conspiracy to defame. IntelliGender's motion to dismiss states that Soriano fails to allege the required elements of (i) an independent tort in support of his claims for tortious interference with a contract; and (2) non-privileged statements in support of his alleged claim for defamation and conspiracy. (Dkt. No. 64., at 2). After Soriano responded to IntelliGender's motion by stating that its affirmative defenses would be more appropriate at summary judgment and not as a Rule 12(b)(6) motion (Dkt. No. 69), IntelliGender replied by requesting summary judgment under Federal Rule of Civil Procedure 56. (*See* Dkt. No. 72, at 1-2.) In IntelliGender's reply, it states that "after the Court determines that privilege in fact applies to any statements made, . . . the Court [should] enter judgment in favor of IntelliGender that Soriano takes nothing on his remaining causes of action for tortious interference and conspiracy. The alleged defamatory statements are the basis for all of [Soriano's] causes of action." (Dkt. No. 72, at 2.) Therefore, IntelliGender is seeking to make the same privilege defense to the defamation claim that FASA attempted, as discussed above. Further, IntelliGender admits that all the remaining causes of action relate to the defamatory statements.

Just as with FASA, IntelliGender, as the party with the burden, fails to provide any choice of law analysis regarding the defamation. The Court again observes that the defamation claim may likely be decided under Chilean law. Therefore, because IntelliGender has not met its burden on the affirmative defense of privilege by not even attempting to perform a choice of law analysis or explain Chilean law, the Court DENIES, without prejudice, IntelliGender's motion for summary judgment and motion to dismiss for failure to state a claim under Rule 12(b)(6).

## IV. CONCLUSION

The Court makes the rulings as described in this Memorandum Opinion and Order and as summarized in the introduction of this Memorandum Opinion and Order.

It is so ORDERED.

SIGNED this 15th day of March, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE